# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| BIOGEN IDEC MA, INC., ) | |
|  ) | |
| Plaintiff, ) | |
|  ) | Civil No. |
| v. ) | 13-13061-FDS |
|  ) | |
| JAPANESE FOUNDATION FOR CANCER ) | |
| RESEARCH and BAYER PHARMA AG, ) | |
|  ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON
## MOTIONS TO DISMISS

**SAYLOR, J.**

This claim arises out of a decision of the United States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("PTAB"). On July 16, 2013, the PTO declared an interference between various claims of U.S. Patent Application No. 08/253,843 (currently owned by Biogen Idec MA, Inc.) and U.S. Patent Application No. 08/463,757 (currently owned by Japanese Foundation for Cancer Research and licensed to Bayer Pharma AG). On October 3, 2013, the PTAB found that the outcome of prior interference proceedings estopped the assertion of the claims of the '843 application and finally refused those claims. Dissatisfied with the PTAB's decision, Biogen Idec sought review by this Court pursuant to 35 U.S.C. § 146 and 28 U.S.C. §§ 1331 and 1338(a).

Defendants have moved to dismiss the claim for lack of personal and subject-matter jurisdiction. For the reasons set forth below, this Court lacks subject-matter jurisdiction and will therefore transfer the action to the United States Court of Appeals for the Federal Circuit.

I.  **Background**

The underlying dispute concerns human fibroblast interferon ("hFIF"), a human protein that possesses useful antiviral and immunological effects and is employed, among other things, to treat multiple sclerosis. The '843 and '757 applications both contain claims involving hFIF proteins.

In the United States, only one patent is permitted for any given patentable invention. For most of its history, the American patent system granted patents to the first person to invent the patentable invention. If multiple parties claiming the same invention disputed which first invented it, there were procedures to determine which one was entitled to the patent. Such procedures include interference proceedings before the Board of Patent Appeals and Interferences ("BPAI").

In 2011, Congress passed the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), converting the patent system from "first-to-invent" to "first-inventor-to-file." Under the new framework, if multiple parties claim the same invention, the first party to file a patent application generally is entitled to the patent. Of course, many patents issued under the old, first-to-invent framework remain in effect and may be subject to dispute. The issue here arises out of the transition from the old system to the new.

A.  **Prior Statutory Framework**

Under the old system, the Director of the PTO was authorized to declare an interference between different patents or patent applications when they appeared to claim the same invention. 35 U.S.C. § 135 (2006). The BPAI would then conduct a proceeding to determine priority of invention and patentability. *Id.* Once the BPAI rendered a final decision, an aggrieved party

2

could either seek review in the Court of Appeals for the Federal Circuit, 35 U.S.C. § 141 (2006), or in a district court that had personal jurisdiction over the winning interferer, *id.* § 146.

B.  **Current Statutory Framework**

On September 16, 2011, the AIA became law. It instituted a phased implementation of the Act's provisions, with most changes going into effect on September 16, 2012, or March 16, 2013 (that is, twelve or eighteen months after enactment).

Interference proceedings have been abolished. Instead, under the new § 135, the Director of the PTO may institute a derivation proceeding to determine whether the first-filing inventor derived (essentially, misappropriated) the claimed invention from a later-filing inventor. 35 U.S.C. § 135(a), (b). Those proceedings are heard by the PTAB, which has replaced the BPAI. 35 U.S.C. § 6; *see* AIA § 3(j)(1). Applicants who are dissatisfied with the final decision of the PTAB in a derivation may seek review in the Federal Circuit, 35 U.S.C. § 141, or in the District Court for the Eastern District of Virginia, *id.* § 146.

C.  **Procedural Background**

On June 3, 1994, Walter C. Fiers filed the '843 patent application, which Biogen Idec now owns.[1] The '843 application was a division of an earlier patent application by Fiers, no. 07/387,503, filed July 28, 1989, which was a division of patent application no. 06/250,609, filed April 3, 1981. On June 5, 1995, Haruo Sugano, Masami Muramatsu, and Tadatsugu Taniguchi filed the '757 patent application, which JFCR now owns. The '757 application claims priority to patent application no. 06/201,359, which also was filed by Sugano.

On August 30, 1983, the PTO declared an interference (no. 101,096) between the '609

---

[1] The facts in this subsection are presented as stated in the complaint.

and '359 applications concerning hFIF DNA. The BPAI awarded priority to the Sugano '359 application. That finding was upheld on appeal. *Fiers v. Revel*, 984 F.2d 1164 (Fed. Cir. 1993).

On July 16, 2013, the PTO declared an interference (no. 105,939) between the '843 and '757 applications, which both contain claims to hFIF. At the same time, the PTO issued an Order to Show Cause to Fiers to show why judgment should not be entered against him based on interference estoppel and issue preclusion from the earlier '096 interference. Fiers responded to the Order, as did Sugano. Fiers also filed a paper presenting the issues of his intended motions in the interference proceeding, which included obviousness, written description, enablement, and priority.

On October 3, 2013, the PTAB found that because of the '096 interference, Fiers was estopped from asserting the claims in the '843 application. The PTAB entered judgment against Fiers and ordered that the claims in the '843 application be finally refused.

On December 2, 2013, Biogen Idec filed suit in this Court against JFCR and against the interested parties whom JFCR had listed in the interference: Bayer Pharma AG, Kyowa Hakko Kirin Co., Ltd., and Toray Industries, Inc. On March 28, 2014, JFCR and Bayer moved to dismiss the complaint for lack of personal and subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). On April 2, 2014, the Court dismissed without prejudice all claims against Kyowa and Toray pursuant to the parties' agreement that they were not indispensable parties.

## II. Standard of Review

Federal courts are courts of limited jurisdiction. They possess only those powers granted by either the Constitution or statute, and cannot adjudicate claims absent such power. *See, e.g.*,

4

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the existence of subject-matter jurisdiction is never presumed. *Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005). Instead, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

In ruling on a motion brought under Fed. R. Civ. P. 12(b)(1), the court must credit the well-pleaded factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court may also consider other evidence, including depositions and exhibits submitted by either party. *Id.*

### III. Analysis

The basic issue presented is whether an aggrieved party to an interference declared after September 16, 2012, has a right to appeal to federal district court, or whether the only remedy is an appeal to the Federal Circuit. More precisely, the question is whether any provision in the law affirmatively grants subject-matter jurisdiction to this Court to hear this dispute.[2] The answer to that question requires interpretation of two statutes: the AIA and the AIA Technical Corrections Act, Pub. L. No. 112-274, 126 Stat. 2456 (2013).

In matters of statutory construction, the proper starting point is the language of the statute itself. *See Watt v. Alaska*, 451 U.S. 259, 265 (1981). Section 3 of the AIA generally institutes the first-inventor-to-file system. *See* AIA § 3(o), (p), 125 Stat. 293 (expressing the sense of Congress about the benefits of a first-inventor-to-file system). Among other changes, it sets

---

[2] Plaintiff, at times, frames the question as one of stripping jurisdiction from the district court. (*See* Pl. Mem. at 12). While it is true that district courts had jurisdiction over interference appeals under pre-AIA § 146 and only the Eastern District of Virginia has jurisdiction under post-AIA § 146, it is misleading to focus on the withdrawal of jurisdiction. The concept of limited federal-court power requires that a statutory provision affirmatively grant jurisdiction to this Court. *See Chase Manhattan Bank (Nat. Ass'n) v. S. Acres Dev. Co.*, 434 U.S. 236, 240 (1978).

conditions for patentability, creates new definitions, and imposes a new statute of limitations. Section 3(i) replaced wholesale 35 U.S.C. § 135, so that there are derivation proceedings rather than interference proceedings.  Section 3(j) then eliminated references to interferences in existing law by, among other things, "striking 'Board of Patent Appeals and Interferences' each place it appears and inserting 'Patent Trial and Appeals Board'" in 35 U.S.C. §§ 134, 145, 146, 154, and 305 and by striking "interference" and inserting "derivation" in 35 U.S.C. § 146.

AIA § 3(n) established the effective date for the changes made by § 3.  It provides:

(1) In general.—Except as otherwise provided in this section, the amendments made by this section *shall take effect upon the expiration of the 18-month period beginning on the date of the enactment of this Act, and shall apply to any application for patent, and to any patent issuing thereon, that contains or contained at any time—*

    (A) a claim to a claimed invention that has an effective filing date as defined in section 100(i) of title 35, United States Code, that is on or after the effective date described in this paragraph; or

    (B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

(2) Interfering patents.—The provisions of sections 102(g), 135 [interferences], and 291 of title 35, United States Code, as in effect on the day before the effective date set forth in paragraph (1) of this subsection, shall apply to each claim of an application for patent, and any patent issued thereon, for which the amendments made by this section also apply, if such application or patent contains or contained at any time—

    (A) a claim to an invention having an effective filing date as defined in section 100(i) of title 35, United States Code, that occurs before the effective date set forth in paragraph (1) of this subsection; or

    (B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

AIA § 3(n) (emphasis added).  For present purposes, this provision divides patents into two

6

categories: (1) those with claims filed after March 16, 2013, and (2) those with claims filed before March 16, 2013. Patents in the first category ("post-AIA patents") are subject to the new first-inventor-to-file system, as set forth in § 3. For patents in the second category ("pre-AIA patents"), the pre-AIA versions of certain sections continue to apply. Former § 135, relating to interference proceedings, generally applies to disputes involving pre-AIA patents.

The parties disagree as to the meaning of AIA § 3(n)(1). Plaintiff contends that because the provision states that "the amendments made by this section . . . shall apply to any" post-AIA patent, the logical inference is that the law as it existed prior to those amendments continues to apply to any pre-AIA patents—including pre-AIA § 146, which provides for an appeal from interference decisions in the district courts. Defendants argue that while the amendments creating a first-to-file system apply to post-AIA patents, the amendments went into effect across the board, sweeping away the old versions of the law except as specifically provided in the AIA.

The latter view appears to be the correct interpretation. The AIA specifically provides which sections of prior law will still apply: §§ 102(g), 135, and 291. AIA § 3(n)(2). The logical inference, therefore, is that the sections that are not specifically mentioned continue to exist—if at all—only as amended after March 16, 2013. *Cf. Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) (applying the principle of "*expressio unius est exclusio alterius*"). Thus, the changes to § 146—substituting "derivation" for "interference" and the PTAB for the BPAI—were in effect at the time that the Director declared the '939 interference.

That is not, however, the end of the inquiry. While AIA § 3 as enacted provided, to a limited extent, for parallel systems for pre- and post-AIA patents, it also left a gap. AIA § 3(n)(2) provided that interferences under the pre-AIA § 135 would continue, but there no longer

7

was a BPAI to adjudicate the dispute and no route of appeal. AIA § 6 partially filled that gap, but only for interferences commenced before September 16, 2012 ("pending interferences"). AIA § 6(f)(3) provides that Director of the PTO should determine whether pending interferences should be dismissed without prejudice or "proceed as if this Act had not been enacted" and may "deem" the PTAB to be the BPAI. AIA § 6(f)(3)(A), (B). Subsection 6(f)(3) further states as follows:

> The authorization to appeal or have remedy from derivation proceedings in section 141(d) [to the Federal Circuit] and 146 [to the Eastern District of Virginia] of title 35, United States Code, as amended by this Act, and the jurisdiction to entertain appeals from derivation proceedings in section 1295(a)(4)(A) of title 28, United States Code, as amended by this Act, shall be deemed to extend to any final decision in an interference that is commenced before [September 16, 2012] and that is not dismissed pursuant to this paragraph.

AIA § 6(f)(3)(C). Thus, interferences commenced before September 16, 2012, had a venue at the PTAB and a right to appeal to the Federal Circuit or the Eastern District of Virginia as if they were derivation proceedings.[3] But the law as originally enacted made no mention of venue or appeal from interferences commenced *after* September 16, 2012—even though AIA § 3 clearly contemplated that such proceedings would be allowed.[4]

---

[3] AIA § 7 established the PTAB to review adverse decisions of examiners, review appeals of reexaminations, conduct derivation proceedings, and conduct *inter partes* reviews and post-grant reviews. Appeals of PTAB decisions are to the Federal Circuit and, for derivation proceedings, also to the Eastern District of Virginia, where the PTO is located. AIA § 7(c); *see* Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Circuit B.J. 539, 624 (2012) (explaining the change in venue to the Eastern District of Virginia). Section 7 went into effect on September 16, 2012, and generally applies to all proceedings commenced after that date. *Id.* § 7(e).

[4] Plaintiff points to a statement by Senator Kyl to support its argument that Congress intended for pre-AIA §§ 141 and 146 to apply to all remaining interferences. For at least two reasons, that argument is unpersuasive. The senator stated that

> To address the continuing need to allow appeals of pending interferences, language has been added to Section [6(f)(3)(C)] of the bill that deems references to derivation proceedings in the current appeals statutes to extend to interferences commenced before the effective date of the bill's repeal of interferences, and that allows the Director to deem the PTAB to be the BPAI for

8

Congress then enacted the AIA Technical Corrections Act ("TCA"), which became law on January 14, 2013. Section 1(k)(3) of the TCA addresses review of interference proceedings:

> The provisions of sections 6 [establishing the BPAI] and 141 [providing review at the Federal Circuit] of title 35, United States Code, and section 1295(a)(4)(A) [providing Federal Circuit jurisdiction over interference appeals] of title 28, United States Code, as in effect on September 15, 2012, shall apply to interference proceedings that are declared after September 15, 2012, under section 135 [interferences] of title 35, United States Code, as in effect before [March 16, 2013]. The [PTAB] may be deemed to be the [BPAI] for purposes of such interference proceedings.

TCA § 1(k)(3). The TCA thus clearly provides that as to interferences declared after September 15, 2012—such as the one at issue here, which was declared on July 16, 2013—the PTAB may hear the dispute and there is a right of appeal to the Federal Circuit.

Plaintiff, however, argues that there remains a right of review in this Court. To be sure, the prior version of § 141 refers to § 146, which formerly provided for appeal of interference decisions in federal district court (and currently provides for appeal of derivation decisions to the Eastern District of Virginia). But the fact that the prior version of § 141 still exists for purposes of new interferences does not mandate that each section to which it refers also survives as it then existed. Congress demonstrated in AIA § 6(f)(3)(C) that it knew how to preserve both avenues of review. Instead, Congress chose in the TCA to reinstate pre-AIA § 141 appeals but to omit

---

purposes of pending interferences and to allow the PTAB to conduct such interferences.

157 Cong. Rec. S1360-02 (daily ed. March 8, 2011) (statement of Sen. Jon Kyl). First, the statement, like AIA § 6 (f)(3)(C), addresses only interferences commenced before the Act goes into effect. It therefore does not speak to interferences, like the '939 interference, that were commenced later. Contrary to plaintiff's contention, the "effective date of the bill's repeal of interference" has passed, despite the fact that interferences may still be declared. Second, a statement by a senator, even directly on point, cannot override the plain language of a statute. *See Burlington N. R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) ("Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but in the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." (internal quotations marks and citations omitted)).

9

pre-AIA § 146 appeals. Accordingly, the logical conclusion is that appeals of interferences declared on or after September 16, 2012, may be brought only in the Federal Circuit.

Plaintiff contends that the TCA did not explicitly reinstate § 146 because that section had never been eliminated. AIA § 3(n)(1), the argument goes, provides that the amendments apply only to post-AIA patents, and therefore the pre-AIA version of Title 35 lives on for pre-AIA patents. Not only would that be a highly unusual state of affairs, it also runs contrary to the plain language of the statute. Congress specifically identified which portions of the prior law continued and how they applied. Pre-AIA § 146 was preserved, but only for interferences that commenced before September 16, 2012.

The PTO regulations and commentary are not to the contrary. The newly enacted regulations governing judicial review of PTAB decisions state that "where available, judicial review of decisions arising out of interferences declared pursuant to 35 U.S.C. § 135 continue to be governed by pertinent regulations in effect on July 1, 2012." 37 CFR § 90.1. The regulation does not say that judicial review *is* available, nor does it say *where* it is available. No inference can be drawn, as plaintiff contends, that judicial review of pre-AIA patent interferences is available in this Court. The comments underlying that proposed regulation state that "§ 3 of the [AIA] makes review of interference decisions by a district court under 35 U.S.C. 146 available only if the provisions of § 3(n)(1) . . . are not satisfied." Patent & Trademark Office, Dep't of Commerice, *Rules of Practice for Trials Before the Patent Trial & Appeal Board & Judicial Review of Patent Trial & Appeal Board Decisions*, 77 FR 6879, 6891 (Feb. 9, 2012). The comment continues: "To the extent that an interference proceeding under 35 U.S.C. [§] 135 is available and judicial review of that decision is available, the Office will continue to apply the

10

regulations as they existed when the [AIA] was enacted . . . to those proceedings." *Id.* Again, the comment as a whole does not affirmatively state that judicial review *is* available, only that *if* it is, then certain regulations apply.[5]

Plaintiff also contends that because the PTO accepted its notice that it intended to appeal to district court rather than to the Federal Circuit, the law must permit appeals to district court. Whatever the meaning of the PTO's acceptance may be, this Court, not the PTO, is charged with determining subject-matter jurisdiction in this proceeding.

In short, the PTAB declared the '939 interference on July 16, 2013, and the law as enacted by Congress permits an appeal only to the Federal Circuit. Accordingly, this Court is without subject-matter jurisdiction to review the PTAB's decision.[6]

Plaintiff requested that in the event that this Court found that it lacks jurisdiction, rather than ordering dismissal, the Court transfer the action to the Federal Circuit. Under 28 U.S.C. § 1631, when a civil action or petition for review is filed in federal court and the court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631; *see In re Teles AG Informationstechnologien*, 2014 WL 1327920 (Fed. Cir. Apr. 4, 2014) (holding that the district court that found it lacked jurisdiction erred in dismissing the case rather than transferring it). Accordingly, in the interest of justice, this Court will transfer the action to the Federal Circuit.

---

[5] For example, judicial review under § 146 is available for interferences commenced prior to September 16, 2012, and the prior PTO regulations would apply to such proceedings.

[6] Because it lacks subject-matter jurisdiction, the Court need not consider defendants' alternate argument that it lacks personal jurisdiction over them.

## IV.     Conclusion

For the foregoing reasons, the motions to dismiss for lack of subject-matter jurisdiction are GRANTED.  This action is TRANSFERRED to the United States Court of Appeals for the Federal Circuit.  The motions to dismiss for lack of personal jurisdiction are DENIED as moot.
**So Ordered.**

    /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  May 22, 2014